270 N.J. Super. 444 (1994)
637 A.2d 539
SCOTCH PLAINS-FANWOOD BOARD OF EDUCATION, PLAINTIFF-APPELLANT,
v.
SCOTCH PLAINS-FANWOOD EDUCATION ASSOCIATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1993.
Decided January 19, 1994.
*445 Before Judges BAIME, CONLEY and VILLANUEVA.
*446 Casper P. Boehm, Jr. argued the cause for appellant (Mr. Boehm, attorney and on the brief).
Randi Doner argued the cause for respondent (Balk, Oxfeld, Mandell & Cohen, attorneys; Sanford R. Oxfeld, of counsel, and Randi Doner, on the brief).
Zazzali, Zazzali, Fagella & Nowak filed a brief for amicus curiae New Jersey Education Association (Richard A. Friedman and Tanya Pushnack Friedman, on the brief).
Sheila Dow Ford, Director, Legal Department New Jersey School Boards Association, filed a brief for amicus curiae New Jersey School Boards Association (Michael K. Kaelber, Associate Counsel, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Plaintiff school board appeals from a Chancery Division order confirming an arbitration award that rescinded a board decision to withhold a salary increment from one of its teachers. We reverse.
MaeDelle Horton (grievant) is a tenured teacher who began her services with the Scotch Plains-Fanwood Board of Education (Board) in 1977. The parties are governed by a Collective Bargaining Agreement (Agreement) covering the period July 1, 1988 to June 30, 1991. On April 26, 1990, she was informed that the Board intended to withhold her increment and maintain her salary for the 1990-91 school year at the 1989-90 level. The Scotch Plains-Fanwood Education Association (Association), grievant's collective bargaining agent, filed a grievance on behalf of Ms. Horton challenging the withholding pursuant to N.J.S.A. 34:13A-26, et seq.
The Board filed a petition with the New Jersey Public Employment Relations Commission (PERC) questioning the arbitrability of this grievance. On February 28, 1991, PERC, exercising its jurisdiction under N.J.S.A. 34:13A-27, found that the grievance was arbitrable. The Board did not appeal PERC's decision.
*447 The parties then proceeded to arbitration before Scott E. Buchheit. The facts, as presented to the arbitrator, included a long record of absenteeism by the grievant. This was acknowledged by the arbitrator in his decision, even though he concluded that the Board acted improperly by withholding the grievant's increment. He stated: "While it [the Board] clearly has a proper interest in the grievant's attendance, it expressed that interest here in a manner that was not valid under the circumstances." He, then, sustained the grievance and rescinded "the disciplinary action [of the Board] of withholding the Grievant's increment" and "restored" the grievant's increment.
On June 2, 1992, the Board obtained an order from the Chancery Division judge which required the Association to show cause why Arbitrator Buchheit's award should not be vacated. On June 26, 1992, the judge denied plaintiff's complaint to vacate the arbitration award and, instead, confirmed the award:
... [T]his Court today finds that arbitrator Berkite (phonetic)  Bukite, rather, rendered his decision based upon the collective agreement between the parties and the previously [sic] P.E.R.C. case .. . Bukite heard testimony on both sides and read the contract. Based on that, he made a judgment call and found the disciplinary withholding of an increment was excessive.... I will deny the application to set aside the award and instead will affirm the award in question.
The Board appeals.

I.
Under N.J.S.A. 34:13A-26, disputes involving the withholding of an employee's increment based upon predominantly disciplinary reasons are subject to the grievance procedure. N.J.S.A. 34:13A-27 provides for PERC to determine whether the withholding of the increment is predominantly disciplinary. If so, the dispute must be resolved via the grievance process. Ibid. PERC merely decides the forum in which the issues will be resolved. PERC specifically stated in this case, that it did not and could not "consider whether an increment withholding was with or without just cause." Finally, under N.J.S.A. 34:13A-29, the grievance procedure requires binding arbitration as the last step with regard to disputes.
*448 The scope of an arbitrator's jurisdiction and authority is determined by and cannot exceed the terms of the collective negotiations agreement. Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 154, 393 A.2d 278 (1978); Harsen v. Board of Educ., 132 N.J. Super. 365, 371, 333 A.2d 580 (Law Div. 1975); Communications Workers v. Monmouth County Bd. of Social Services, 96 N.J. 442, 448, 476 A.2d 777 (1984); Kearny P.B.A. Local 21 v. Town of Kearny, 81 N.J. 208, 217, 405 A.2d 393 (1979).
While there is a strong presumption in favor of arbitration awards, the courts should vacate an award where the arbitrator has "exceeded or so imperfectly executed [his] powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8d.
In this matter, the scope of the arbitrator's jurisdiction and authority was set forth in the parties' Agreement. Article 4, section D states:
Employment increments, i.e., a step up on the Salary Guide based on service or additional salary raises which may be authorized by the Board, are not automatic. Such increments and/or raises shall be awarded based upon the recommendation of the Superintendent and approval by the Board of Education.... (Emphasis added).
Article 6 "Grievance Procedure," subsection C(10)(c) states:
The arbitrator shall be empowered to hold a hearing or hearings and to obtain all relevant data concerning the grievance. He shall render the written decision within thirty (30) days after the completion of the hearing or hearings or submissions of any additional data. A copy shall be simultaneously furnished to the Association and the Board. The arbitrator shall limit himself to the issue submitted and shall consider nothing else. He can add nothing to nor subtract anything form [sic] this Agreement between the parties or any policy of the Board of Education. The award of the arbitrator shall be final and binding on the parties. (Emphasis added).
Finally, Article 17, section A, states:
This Agreement and its appendices shall constitute the entire Agreement between the parties and shall not be modified in whole or in part by the parties except by an instrument in writing duly executed by both parties.
Furthermore, N.J.S.A. 18A:29-14 states:
Any Board of Education may withhold, for inefficiency or other good cause, the employment increment, or the adjustment increment, or both, of any member in *449 any year by a recorded roll call majority vote of the full membership of the board of education.

II.
Plaintiff contends that the award was beyond the arbitrator's jurisdiction and authority pursuant to Article 6 of the Agreement because his consideration of PERC's decision and the dicta which stated that the Board's action "was intended to penalize Horton for absenteeism and to induce her to improve her attendance" went beyond the issues submitted to the arbitrator in this matter. The plaintiff argues that it was not necessary for the arbitrator to determine whether the action of the Board was disciplinary in nature or not.
The arbitrator was limited to Article 4 of the Agreement, with regard to increments. Therefore, the issue before the arbitrator was whether the Board had good cause for its decision. Article 6 of the Agreement limited the arbitrator's jurisdiction solely to the issues submitted. The fact that PERC characterized the withholding as disciplinary was only important procedurally as PERC determined the forum of review  the contractual grievance process. The arbitrator's focus should merely have been to decide the issues submitted by the parties under the appropriate standard, not to consider PERC's conclusion that the matter was arbitrable nor its reasons therefor. By considering that information, the arbitrator exceeded his authority. By accepting PERC's characterization of the increment withholding as one designed to "penalize," the arbitrator impermissibly added to the agreement and considered items outside the scope of his authority. As a result of these errors, the arbitrator created an award which failed to draw its essence from the parties' Agreement.
In the seminal case of Board of Educ. v. Bernards Tp. Educ. Ass'n, 79 N.J. 311, 399 A.2d 620 (1979), the Supreme Court stated:
The decision to withhold an increment  although directly affecting the work and welfare of a teacher  is thus dependent upon an evaluation of the quality of the services the teacher has rendered. The purpose of this statute is thus to reward only those who have contributed to the educational process thereby encouraging *450 high standards of performance. In determining whether to withhold a salary increment, a local Board is therefore making a judgment concerning the quality of the educational system. It is reasonable to assume that an adversely affected teacher will strive to eliminate the causes or bases of "inefficiency." The decision to withhold an increment is therefore a matter of essential managerial prerogative which has been delegated by the Legislature to the Board.
[Id. at 321, 399 A.2d 620].
The decision in the Bernards Tp. case clearly sets forth a standard for which boards of education may withhold the increment of a tenured teacher: whenever the board can establish inefficiency or other good cause, its decision must be affirmed.
The arbitrator's decision herein, however, suggests that a teacher has an automatic right to increments, even if he or she was absent for the entire school year. Such is obviously not the law. If a teacher does not attend to her/his duties on a regular basis, even when attendance is beyond the control of the teacher, this establishes a good cause to withhold the increment. Herein, the Board established good cause.
Additionally, rather than focusing on Article 4, the arbitrator improperly focused on his belief that the disciplinary action taken would not accomplish the goal of the Board. Whether or not the arbitrator believes that withholding an increment will accomplish the Board's objective of establishing good attendance is not the proper standard of review. There merely was a difference of opinion between the arbitrator and the Board, not a finding that the Board did not have good cause for withholding the increment. By focusing on whether or not withholding the increment would accomplish the Board's purposes, instead of examining whether the Board had good cause for its decision, the arbitrator erred.
In Kopera v. West Orange Bd. of Educ., 60 N.J. Super. 288, 294-296, 158 A.2d 842 (App.Div. 1960), we established that the decision of a local board of education to withhold an increment of a teaching staff member is a "discretionary" action which may not be upset unless found to be "patently arbitrary, without rational basis or induced by improper motives."
*451 The Supreme Court stated in the North Plainfield Educ. Ass'n v. Board of Educ., 96 N.J. 587, 476 A.2d 1245 (1984), that "a teacher's entitlement to a salary increase under N.J.S.A. 18A:29-8 is subject to denial by the school board `for inefficiency or other good cause....'" Id. at 593, 476 A.2d 1245 (quoting N.J.S.A. 12A:29-14).
The Board could reasonably have concluded that Grievant's absences caused inefficiencies and adversely affected a thorough and efficient educational system and therefore had good cause for withholding Grievant's increment. Whether the arbitrator agreed with the Board's conclusion is immaterial because he could not rescind the Board's action unless it was "arbitrary, without rational basis or induced by improper motives." No such finding could reasonably have been made under the facts herein.
Finally, the arbitrator's finding that the Board's "disciplinary action" was "excessive" creates a progressive discipline standard where none exists in the contract. In County College of Morris Staff v. County College of Morris, 100 N.J. 383, 390, 495 A.2d 865 (1985), the Supreme Court vacated an arbitration award which imposed a progressive disciplinary action that was not included in the parties' collective bargaining agreement. The Supreme Court found that plaintiffs' contractual grievance was confined to the express terms of the contract and the contractual provisions at issue were the "just cause for dismissal" terms. Id. at 392-93, 495 A.2d 865. There existed no other contract terms that would permit reduction of the penalty of discharge to one of suspension (or warning). Id. at 393, 495 A.2d 865.
In a very similar case, Local 462 v. Charles Schaefer & Sons, Inc., 223 N.J. Super. 520, 530, 539 A.2d 295 (App.Div. 1988), we found that the arbitrator exceeded his authority by imposing a progressive disciplinary scheme upon the parties where none existed in the contract. Along with a narrow arbitration clause, the parties' agreement contained an express provision authorizing discharge should an employee be found drinking alcoholic beverages on the premises. Id. at 522, 539 A.2d 295. Having found that *452 six employees had engaged in such conduct, the arbitrator was not permitted to fashion a less severe remedy by reading a progressive disciplinary scheme into the contract. Id. at 528-29, 539 A.2d 295. The arbitrator's decision to bar the employee's termination for cause did not "draw its essence from the collective bargaining agreement" and therefore could not be enforced. Id. at 530, 539 A.2d 295. Thus, we vacated the award. Ibid.
A review of the arbitrator's decision herein clearly establishes that he "read into" the Agreement a progressive discipline standard, as evidenced by his statement that:
There can be no doubt that the Board had a legitimate and proper interest in the extent of the Grievant's absenteeism. She has had a large number of absences throughout her teaching career in general, and during the 1989-1990 school year in particular. The Board has also established that these absences had a detrimental effect upon the educational process, particularly in light of the Grievant's assignment as a teacher in the Resource Room. Thus, the Board has abundantly established that it has an interest in the Grievant having good and regular attendance.
Yet, the arbitrator then states:
What the Board cannot establish, however, is that the withholding of the Grievant's increment will in any way accomplish this objective. The Board has candidly acknowledged that it does not question the validity of any of the Grievant's absences. It is therefore difficult to understand how a disciplinary action can induce the Grievant to improve her attendance where, in the absence of an investigation establishing to the contrary, it must be concluded that the source of her absences were illnesses and injuries beyond her control.
Notwithstanding the arbitrator's finding that the Board had established that these absences had a detrimental effect on the educational process, he concluded that "the disciplinary withholding of an increment, was excessive," as a first act of discipline imposed upon the grievant and that "[s]uch severe punitive action was not reasonable as a first act of discipline against the Grievant." (Emphasis added). The parties had the ability to develop a progressive discipline scheme through the negotiations process if they had so desired, but they chose not to do so. The Agreement's narrow arbitration clause circumscribes the arbitrator's authority and prevents him from reading a progressive disciplinary scheme into the contract. County College of Morris, supra, and Local 462, supra.
*453 Even assuming, arguendo, that a progressive disciplinary scheme could be read into the Agreement, the Board's action was not the first time that the Board expressed its concern regarding grievant's absentee record. The arbitrator erred in concluding that this was the first act of discipline. Grievant's interim evaluation report of November 8, 1989, referenced her attendance record stating that it "helped create a failure in providing good instructional leadership for her students." Her summary evaluation report of March 29, 1990, noted that her absences made it "hard to maintain an effective educational program for her special education students" and that "the difficulties had arisen only due to Horton's absences...."

III.
It is unnecessary for us to consider the amicus New Jersey School Boards Association's argument that the Chancery Division judge erred in applying the standard of limited judicial review traditionally afforded to private sector grievance arbitration, N.J.S.A. 2A:24-8, to this public employee grievance arbitration. See Division 540 v. Mercer County Improvement Authority, 76 N.J. 245, 253-54, 386 A.2d 1290 (1978) (holding that judicial oversight "should be more extensive" than that afforded under N.J.S.A. 2A:24-8 when arbitration is required by law).
The Chancery Division decision is reversed and the decision of the Board to withhold grievant's increment for the 1990-91 school year is reinstated.
CONLEY, J.A.D., concurring.
I agree with the result reached by the majority. Simply stated, PERC's characterization of the increment withholding as disciplinary was solely for the purpose of determining the arbitrability of the grievance pursuant to N.J.S.A. 34:13A-26, 27. I agree that it was not a finding in any way binding upon the arbitrator in his disposition of the grievance, as PERC so acknowledged. The scope of the arbitrator's review was limited to the terms of the contract. Pursuant to Article 4, section D, increments are awarded *454 "based upon recommendation of the Superintendent and approval by the Board of Education." Implicit in this provision is that such recommendation and approval be consistent with the governing statute, N.J.S.A. 18A:29-14. Pursuant thereto, increments may be withheld "for inefficiency or other good cause." See Board of Educ. v. Bernards Tp. Educ. Ass'n, 79 N.J. 311, 321, 399 A.2d 620 (1979).
The arbitrator's function, thus, was to determine whether the Board demonstrated inefficiency or other good cause for the withholding. Clearly it did, as the arbitrator acknowledged when he said "[t]here can be no doubt that the Board had a legitimate and proper interest in the extent of the Grievant's absenteeism ... these absences had a detrimental effect upon the educational process, particularly in light of the Grievant's assignment as a teacher in the Resource Room." Whether or not the withholding will make the teacher any more or less efficient or have better attendance, is not the function of the arbitrator to determine. If the Board's rationale for the withholding was consistent with the statute, that should have been the end of the arbitration. Plainly it was and, thus, I concur in the result.