651 A.2d 1018

SCOTCH PLAINS–FANWOOD BOARD OF EDUCATION, PLAIN-TIFF–RESPONDENT, v. SCOTCH PLAINS–FANWOOD EDUCATION ASSOCIATION, DEFENDANT–APPELLANT.

Argued October 25, 1994—Decided January 26, 1995.

144

*Sanford R. Oxfeld* argued the cause for appellant (*Balk, Oxfeld, Mandell & Cohen,* attorneys; *Mr. Oxfeld* and *Gail S. Oxfeld,* on the brief).

*Casper P. Boehm, Jr.,* argued the cause for respondent.

*Richard A. Friedman* and *Kathleen A. Naprstek* submitted a letter brief on behalf of *amicus curiae* New Jersey Education Association (*Zazzali, Zazzali, Fagella & Nowak,* attorneys).

*Michael F. Kaelber,* Senior Associate Counsel, submitted a letter brief on behalf of New Jersey School Boards Association (*Shiela E. Dow–Ford,* Director, attorney).

The opinion of the Court was delivered by

STEIN, J.

The issue in this case is whether an arbitrator exceeded his authority when he determined that a board of education had improperly withheld a teacher's salary increment. The board withheld the teacher's increment due to excessive absenteeism. An arbitrator ordered the increment restored, concluding that the board's decision had been arbitrary. The Chancery Division confirmed the award. The Appellate Division reversed, reasoning that the arbitrator had exceeded his authority in ordering the restoration of the increment. 270 *N.J.Super.* 444, 449, 637 *A.*2d 539 (1994). We granted certification, 137 *N.J.* 165, 644 *A.*2d 613 (1994), and now reverse.

I

The facts, which are essentially undisputed, are taken from the arbitrator's opinion. MaeDelle Horton, a tenured teacher, has been employed by the Scotch Plains–Fanwood Board of Education (Board) since 1977. She taught at the "Resource Room" in the high school throughout her employment. A Resource Room teacher works with a relatively small number of students who require special attention. The position requires consistent communication with other teachers, parents, and staff. Because the

instructional program is based on the individual needs of students, the arbitrator determined that "frequent absence of the teacher is a particular difficulty."

From the time she began her employment until completion of the 1988–89 school year, Horton was absent 244.5 days due to illness. In 1985, and again in 1988, the high-school principal wrote to Horton and expressed concern over her extensive absences. The principal's letter of 1988 warned "that based upon your accumulated record and failure to provide good instructional leadership for your students as a result of these absences, you have placed my recommendation for your increment in serious doubt."

The agreement between the Board and the Scotch Plains–Fanwood Education Association (Association), which was in effect from July 1, 1988, to June 30, 1991 (Agreement), provided for salary increments. Article 4, section D of that Agreement states: "Employment increments, i.e., a step up on the Salary Guide based on service or additional salary raises which may be authorized by the Board, are not automatic. Such increments and/or raises shall be awarded based upon the recommendation of the Superintendent and approval by the Board of Education."

In September 1989, Horton was injured in a train accident. Although she promptly notified the Board that she would need several days to recover, she did not indicate that she would be absent for an extended period. As a result, the Board did not obtain a permanent substitute to instruct Horton's students. However, Horton did not return to work until November 15, 1989.

Horton received an Interim Evaluation Report from the high-school principal during November 1989, which concluded that Horton's attendance record had "helped create a failure in providing good instructional leadership for [her] students." Horton responded by noting that her recent periods of absence had been justified: her absence for fifty to fifty-five days from February to June 1989, had been due to major surgery and her absence for twenty-seven days during the 1989–90 school year had been due to injuries sustained in the train accident.

The principal wrote Horton's Summary Evaluation Report in March 1990, and noted that she had been absent nearly forty days during the 1989–90 school year. The principal concluded that Horton's absences had "made it hard to maintain an effective educational program for her special education students." In rebuttal, Horton contended that holding her responsible for the maintenance of an effective educational program during justified periods of absence was unfair. In April 1990, the Board informed Horton that her salary for the 1990–91 school year would remain at the 1989–90 level because her "absentee record has impaired [her] performance in the sense that [she] ha[s] failed to provide good instructional leadership for [her] students."

Horton filed a grievance in opposition to the withholding of her increment, which the Board denied on the ground that the withholding "was for predominantly educational reasons." Thereafter, the Association filed for binding arbitration. In response, the Board filed a petition with the New Jersey Public Employment Relations Commission (PERC) questioning whether the dispute was subject to arbitration. The applicable statutes specify that if a board of education withholds a teacher's increment for "predomina[ntly] disciplinary reasons," the dispute must be settled by a grievance procedure that requires "binding arbitration as the terminal step." *N.J.S.A.* 34:13A–26 and –29. Pursuant to *N.J.S.A.* 34:13A–27a, PERC determined that the basis for withholding Horton's increment had been predominantly disciplinary and, accordingly, found that the dispute was arbitrable. The Board did not appeal that conclusion, and the parties proceeded to arbitration.

Article 6, subsection C(10)(c), of the Agreement delineates the scope of the arbitrator's authority to resolve grievance disputes between the parties:

> The arbitrator shall be empowered to hold a hearing or hearings and to obtain all relevant data concerning the grievance. He shall render a written decision within thirty (30) days after the completion of the hearing or hearings or submissions of any additional data. A copy shall be simultaneously furnished to the Association and the Board. The arbitrator shall limit himself to the issue submitted and shall

consider nothing else. He can add nothing to nor subtract anything form [sic] this Agreement between the parties or any policy of the Board of Education. The award of the arbitrator shall be final and binding on the parties.

Article 17, section A, of the Agreement further provides: "This Agreement and its appendices shall constitute the entire Agreement between the parties and shall not be modified in whole or in part by the parties except by an instrument in writing duly executed by both parties."

After conducting a hearing, the arbitrator found that

[t]here can be no doubt that the Board had a legitimate and proper interest in the extent of [Horton]'s absenteeism. She has had a large number of absences throughout her teaching career in general, and during the 1989–1990 school year in particular. The Board has also established that these absences had a detrimental effect upon the educational process, particularly in light of [Horton]'s assignment as a teacher in the Resource Room. Thus, the Board has abundantly established that it has an interest in [Horton] having good and regular attendance.

Despite that finding, the arbitrator ordered the restoration of Horton's increment. He agreed with PERC's determination that the basis of the Board's decision to withhold the increment had been predominantly disciplinary. He concluded that because the Board had not questioned the validity of any of Horton's absences, its decision to withhold the increment "based upon the sheer number of days of her absences, without due consideration for the particular circumstances for her absences, was arbitrary and without any demonstrated rational basis." Finally, the arbitrator reasoned that even if the Board were justified in taking some disciplinary action, the disciplinary withholding of an increment was excessive.

After the Chancery Division confirmed the award, the Appellate Division reversed, holding that the award was beyond the arbitrator's authority. The Appellate Division identified three errors in the arbitrator's disposition. First, the court found that the arbitrator had exceeded his authority by considering PERC's characterization of the increment withholding as disciplinary, noting that PERC's characterization of the dispute has only procedural relevance. 270 *N.J.Super.* at 449, 637 *A.*2d 539. Second, the panel observed that the arbitrator's disposition incorrectly had assumed

that a teacher's salary increment is a matter of right. *Id.* at 450, 637 *A.*2d 539. Third, the court determined that the arbitrator had attempted to require the Board to impose progressive discipline, which was not authorized by the Agreement. *Id.* at 451, 637 *A.*2d 539.

## II

Our courts view favorably the settlement of labor-management disputes through arbitration. *County College of Morris Staff Ass'n v. County College of Morris,* 100 *N.J.* 383, 390, 495 *A.*2d 865 (1985). Arbitration is designed to provide final, speedy, and inexpensive settlement of disputes; it is " 'meant to be a substitute for and not a springboard for litigation.' " *Barcon Assocs., Inc. v. Tri–County Asphalt Corp.,* 86 *N.J.* 179, 187, 430 *A.*2d 214 (1981) (quoting *Korshalla v. Liberty Mut. Ins. Co.,* 154 *N.J.Super.* 235, 240, 381 *A.*2d 88 (Law Div.1977)). Accordingly, the role of the courts in reviewing arbitration awards is extremely limited, *Local No. 153, Office & Professional Employees Int'l Union v. Trust Co. of New Jersey,* 105 *N.J.* 442, 448, 522 *A.*2d 992 (1987); *Local Union 560, I.B.T. v. Eazor Express, Inc.,* 95 *N.J.Super.* 219, 227, 230 *A.*2d 521 (App.Div.1967); and an arbitrator's award is not to be cast aside lightly. *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 221, 405 *A.*2d 393 (1979).

Courts' deference to an arbitrator's decision has limitations, however. When the parties enter into an agreement that defines the scope of the arbitration process, an arbitrator may not exercise greater authority than the contract confers. *County College of Morris, supra,* 100 *N.J.* at 391, 495 *A.*2d 865. The scope of an arbitrator's authority depends on the terms of the contract between the parties. *Local No. 153, supra,* 105 *N.J.* at 449, 522 *A.*2d 992; *County College of Morris, supra,* 100 *N.J.* at 391, 495 *A.*2d 865; *Barcon Assocs., supra,* 86 *N.J.* at 209–10, 430 *A.*2d 214 (Clifford, J., dissenting). Any action taken beyond that authority is impeachable and may be vacated on statutory grounds. *Communication Workers, Local 1087 v. Monmouth*

*County Bd. of Social Servs.*, 96 *N.J.* 442, 448, 476 *A.*2d 777 (1984); *In re Arbitration Between Grover & Universal Underwriters Ins. Co.*, 80 *N.J.* 221, 229, 403 *A.*2d 448 (1979). The applicable statute, *N.J.S.A.* 2A:24–8d, compels a court to vacate an arbitration award "[w]here the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made."

■ In public-sector arbitration, an arbitration award may not have " 'the effect of establishing a provision of a negotiated agreement inconsistent with state statutory policy.' " *Old Bridge Bd. of Educ. v. Old Bridge Educ. Ass'n*, 98 *N.J.* 523, 528, 489 *A.*2d 159 (1985) (quoting *Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n*, 94 *N.J.* 9, 15, 462 *A.*2d 137 (1983)); *see also Township of W. Windsor v. Public Employment Relations Comm'n*, 78 *N.J.* 98, 116, 393 *A.*2d 255 (1978) (holding that statutes that set specific terms and conditions of public employment "are effectively incorporated by reference as terms of any collective agreement covering employees to which they apply").

The Appellate Division determined that this case was controlled by *N.J.S.A.* 18A:29–14, which provides: "Any Board of Education may withhold, for inefficiency or other good cause, the employment increment, or the adjustment increment, or both, of any member in any year by a recorded roll call majority vote of the full membership of the board of education."

■ We have previously discussed *N.J.S.A.* 18A:29–14 and reasoned that

[t]he decision to withhold an increment—although directly affecting the work and welfare of a teacher—is ... dependent upon an evaluation of the quality of the services which the teacher has rendered. The purpose of the statute is thus to reward only those who have contributed to the educational process thereby encouraging high standards of performance. In determining whether to withhold a salary increment, a local board is therefore making a judgment concerning the quality of the educational system.

[*Board of Educ. v. Bernards Township Educ. Ass'n*, 79 *N.J.* 311, 321, 399 *A.*2d 620 (1979).]

We have rejected the notion that *N.J.S.A.* 18A:29–14 provides teachers with a "statutory entitlement unrelated to [their] qualifications, performance or quality of teaching services rendered." *North Plainfield Educ. Ass'n v. Board of Educ.*, 96 *N.J.* 587, 593, 476 *A.*2d 1245 (1984). Instead, the statute provides for an annual evaluation of teacher performance, which both affords teachers economic security and encourages quality in performance. *Ibid.; see also Probst v. Board of Educ.*, 127 *N.J.* 518, 526, 606 *A.*2d 345 (1992) ("Increment withholding is widely used to promote and maintain high standards of professionalism for public-school teachers."). The evaluation of a teacher's performance "is a management prerogative essential to the discharge of the duties of a school board." *North Plainfield Educ. Ass'n, supra*, 96 *N.J.* at 593, 476 *A.*2d 1245.

The Association argues that *N.J.S.A.* 18A:29–14 no longer determines the standard of review for the "disciplinary" withholding of a teacher's salary increment in view of the Legislature's recent amendments to the New Jersey Employer–Employee Relations Act (the Act). It argues that those amendments, *L.* 1989, *c.* 269 (codified at *N.J.S.A.* 34:13A–22 to –29) (scope-of-negotiations amendments), impose a "just cause" standard of review when a teacher's salary increment is withheld for disciplinary reasons.

In view of our recent analysis of the early case law interpreting the Act in *State v. State Troopers Fraternal Ass'n*, 134 *N.J.* 393, 634 *A.*2d 478 (1993), we need revisit that background only briefly to address whether the scope-of-negotiations amendments altered the standard of review for disciplinary increment withholdings. As originally enacted, the Act "mandated that public employers negotiate in good faith with the majority representative of public employees 'with respect to grievances and terms and conditions of employment.'" *Id.* at 401, 634 *A.*2d 478 (quoting *L.* 1968, *c.* 303, § 7). However, the Legislature did not define the phrase "terms and conditions of employment" and failed to define "what subjects were negotiable and what subjects were outside the sphere of negotiation." *Dunellen Bd. of Educ. v. Dunellen Educ. Ass'n*, 64

*N.J.* 17, 24, 311 *A.*2d 737 (1973). In the so-called *"Dunellen* trilogy" of cases decided in 1973, we "established the need to determine on a case-by-case basis the subjects that are mandatorily negotiable under the Act, as distinguished from matters of governmental policy exclusively within the prerogative of management." *State Troopers Fraternal Ass'n, supra,* 134 *N.J.* at 401–02, 634 *A.*2d 478.

In response to concerns voiced by employee groups that were "[s]everely dissatisfied with the restrictive limitations on the scope of negotiations," the Legislature amended the Act in 1974. Thomas M. Moore, Comment, *After* Ridgefield Park *and* State Supervisory Employees: *The Scope of Collective Negotiations in the Public Sector of New Jersey,* 10 *Seton Hall L.Rev.* 558, 564 (1980). The most significant change was an amendment to *N.J.S.A.* 34:13A–8.1, which had previously ended with the phrase "nor shall any provision hereof annul or modify any statute or statutes of this State." We had relied on that language in *Dunellen* to preclude negotiability under the Act of subjects within the purview of existing legislation. *Dunellen Bd. of Educ., supra,* 64 *N.J.* at 28–29, 311 *A.*2d 737. The Legislature amended *N.J.S.A.* 34:13A–8.1 to state: "[N]or shall any provision hereof annul or modify any *pension* statute or statutes of this State." *L.* 1974, *c.* 123, § 6 (emphasis added). We rejected the position that that amendment created a permissive category of negotiable matters in public-employment labor relations in *Ridgefield Park Education Ass'n v. Ridgefield Park Board of Education,* 78 *N.J.* 144, 393 *A.*2d 278 (1978), and instead "reaffirm[ed] our holding in *Dunellen* that there are but two categories of subjects in public employment negotiation—mandatorily negotiable terms and conditions of employment and non-negotiable matters of governmental policy." *Id.* at 162, 393 *A.*2d 278.

In *Bernards Township Education Ass'n, supra,* we analyzed "the propriety of subjecting salary increment disputes to arbitration." 79 *N.J.* at 318, 399 *A.*2d 620. Specifically, the Court determined the validity of a clause in a public-sector negotiated

agreement providing that disputes concerning a decision to withhold a teacher's salary increment "for inefficiency or other good cause," *N.J.S.A.* 18A:29–14, shall be subject to advisory, as opposed to binding, arbitration. *Bernards Township Educ. Ass'n, supra,* 79 *N.J.* at 318, 399 *A.*2d 620. To determine whether the arbitration clause at issue constituted a negotiable term and condition of employment, the Court applied the following standard: " '[T]erms and conditions of employment are those matters [1] which intimately and directly affect the work and welfare of public employees and [2] on which negotiated agreement would not significantly interfere with the exercise of inherent managerial prerogatives pertaining to the determination of governmental policy.' " *Id.* at 320, 399 *A.*2d 620 (quoting *State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 67, 393 *A.*2d 233 (1978)). Although we reasoned that the decision to withhold a salary increment directly affects the work and welfare of public-school teachers, we nevertheless concluded that such a decision is "a matter of essential managerial prerogative which has been delegated by the Legislature to the Board ... [and accordingly] cannot be bargained away." *Id.* at 321, 399 *A.*2d 620. Although the Court precluded the submission of increment-withholding disputes to *binding* arbitration, it enforced the clause at issue and held that "parties may agree to submit to *advisory* arbitration disputes concerning the applicability to individual employees of matters of governmental policy." *Id.* at 326, 399 *A.*2d 620 (emphasis added).

In 1982, the Legislature enacted the so-called "discipline amendment" to *N.J.S.A.* 34:13A–5.3, *L.* 1982, *c.* 103, to overrule an Appellate Division decision that had concluded that "disciplinary determinations did not fall within the scope of mandatory negotiations and that collective agreements could not, therefore, provide for the submission to binding arbitration of contested disciplinary actions." Assembly Member Patero, *Statement to Assembly Bill No. 706* (Feb. 1, 1982). Although the bill that initially was passed would have permitted the settlement of teachers' increment-withholding disputes through binding arbitration despite the statutory

review procedure in *N.J.S.A.* 18A:29–14, the Legislature had to reenact the bill after Governor Kean's conditional veto. In his conditional-veto message, Governor Kean "expressed conceptual approval of the bill's objectives but recommended that the bill be amended to provide that negotiated disciplinary-dispute procedures not be available to those public employees already covered by tenure, statutory, or Civil Service appeal procedures." *State Troopers Fraternal Ass'n, supra,* 134 *N.J.* at 412, 634 *A.*2d 478. Thereafter, "The Legislature reenacted the bill to incorporate the recommendations in the Governor's veto message." *Ibid.* Accordingly, despite the disciplinary amendment, binding arbitration remained unavailable for disputes involving the withholding of a teacher's increment.

With that background in mind, we turn to the scope-of-negotiations amendments. Those amendments were intended to expand "the scope of negotiations for public school employees in matters relating to extracurricular activities and discipline, including increment withholding." Assembly Labor Committee, *Statement to L.1989, c. 269* (reprinted at *N.J.S.A.* 34A:13A–22). Through those amendments, "all discipline, including reprimands, may be appealed through the locally negotiated grievance procedures which must provide for binding arbitration as the final step in the procedure." *Ibid.* However, "The withholding of a teaching staff member's increment based on actual teaching performance would still be appealable to the Commissioner of Education." *Ibid.* If a dispute occurs over the proper characterization of an increment withholding, PERC "determine[s] whether the basis for the ... withholding is predomina[ntly] disciplinary." *N.J.S.A.* 34:13A–27a.

The scope-of-negotiations amendments further require that "[i]n any grievance procedure negotiated pursuant to this act, the burden of proof shall be on the employer covered by this act seeking to impose discipline as that term is defined in this act." *N.J.S.A.* 34:13A–29b. "Discipline" is defined to include "all forms of discipline, *except* ... the withholding of increments pursuant to

N.J.S. 18A:29–14." *N.J.S.A.* 34:13A–22 (emphasis added). We construe that definition of "discipline" to reflect a legislative determination to distinguish the withholding of an increment for disciplinary reasons from an increment-withholding for reasons of teaching performance. Hence, we conclude that the statutory standard governing the withholding of increments based on teaching performance does not apply to the withholding of an increment as a means of discipline. However, *N.J.S.A.* 18A:29–14, and the case law interpreting that provision, remain applicable when "the reason for the increment withholding relates predomina[ntly] to the evaluation of a [teacher's] teaching performance." *N.J.S.A.* 34:13A–27d.

We note that, contrary to the Appellate Division's conclusion, the arbitrator was bound by PERC's determination that the Board's action was taken for disciplinary reasons. *N.J.S.A.* 34:13A–27a expressly confers on PERC the authority to resolve a dispute concerning whether the basis for an increment-withholding is disciplinary. Although the Board argued that it had withheld the increment for predominantly educational reasons, it did not appeal PERC's decision that the basis for the withholding had been predominantly disciplinary. Hence, the arbitrator had no alternative other than to apply a standard less permissive than that set forth in *N.J.S.A.* 18A:29–14.

Although the scope-of-negotiations amendments preclude the applicability of *N.J.S.A.* 18A:29–14 for disciplinary-increment withholdings, they do not address what the appropriate standard of review should be. Therefore, we next analyze whether the arbitrator applied an appropriate standard.

### III

At the hearing before the arbitrator, the parties disagreed on the appropriate standard of review: the Board argued that an arbitrary, capricious, or unreasonable standard should apply; the Association believed that a just-cause standard was proper. The arbitrator concluded that the parties' opposing contentions con-

cerning the appropriate standard of review were actually irrelevant because "it is commonly understood that the absence of just cause for a disciplinary action means that the Employer acted in an arbitrary, capricious or discriminatory fashion; i.e. unreasonably." Although he found that the Board had "abundantly established that it has an interest in [Horton] having good and regular attendance," he concluded that because the Board had not questioned the validity of Horton's absences, the increment withholding would not accomplish the Board's objective. Therefore, the arbitrator found that the decision to withhold the increment "was arbitrary and without any demonstrated rational basis."

In evaluating the arbitrator's analysis, we note that the Agreement does not provide a standard for evaluating the Board's decision to withhold an increment for disciplinary reasons. Accordingly, because neither the Agreement nor the scope-of-negotiations amendments addressed the applicable standard of review, the arbitrator was obligated to discern the applicable standard. We have previously concluded that although an arbitrator cannot contradict the express terms of a collective-bargaining agreement, "[i]t is the arbitrator's role to fill the gaps" in that agreement. *Local No. 153, supra,* 105 *N.J.* at 452, 522 *A.2d* 992.

We believe that the arbitrator properly applied a just-cause standard of review, which collective-bargaining agreements and arbitrators generally adopt as the appropriate standard for resolving disciplinary disputes. *See, e.g.,* Roger I. Abrams and Dennis R. Nolan, *Toward a Theory of 'Just Cause' in Employee Discipline Cases,* 1985 *Duke L.J.* 594, 594 (1985) (stating that "almost every collective bargaining agreement permits the employer to discipline an employee for 'just cause'"); Martin H. Malin, *The Supreme Court and the Duty of Fair Representation,* 27 *Harv.C.R.–C.L.L.Rev.* 127, 171 n. 199 (1992) ("A Bureau of National Affairs survey shows that 97% of all collective bargaining agreements expressly control discipline and discharge, and 94% expressly require just cause."); *see also* Ronald T. Hyman, *Withholding a Teacher's Salary Increment,* 85 *Ed.L.Rep.* 975, 985

(1993) (analyzing scope-of-negotiations amendments and concluding that "board of education will have the burden of proving that it had just cause for denying an increment [because,] [t]raditionally, arbitrators who decide disciplinary cases use the just cause test"). In fact, " 'The weight of arbitral opinion is that a standard of just cause may be imposed upon disciplinary actions even though such a standard is not spelled out in the agreement.' " *Smith v. Kerrville Bus Co.*, 709 *F.*2d 914, 918 (5th Cir.1983) (quoting *Pacific Tel. & Tel. Co.*, 36 *Lab.Arb.* (BNA) 503, 505 (1960)). Because the arbitrator adopted a well-settled standard, his analysis did not "simply reflect [his] own notions of industrial justice." *United Paperworks Int'l Union v. Misco, Inc.*, 484 *U.S.* 29, 38, 108 *S.Ct.* 364, 371, 98 *L.Ed.*2d 286, 299 (1987).

Furthermore, the arbitrator's analysis is consistent with the Legislature's desire to provide additional rights and protections to teachers in the context of a disciplinary increment withholding. *See N.J.S.A.* 34:13A–28 (stating that "this act shall be construed as providing additional rights in addition to and supplementing the rights provided by [*N.J.S.A.* 34:13A–5.3]"). To require binding arbitration as the terminal step in a grievance dispute concerning a disciplinary increment withholding, while at the same time requiring the arbitrator to apply a highly deferential "managerial prerogative" standard, would undoubtedly frustrate the apparent objectives of the Legislature. Accordingly, we believe that a just-cause standard properly effectuates the Legislature's purpose in enacting the scope-of-negotiations amendments to provide additional rights and protections for teachers who have an increment withheld for disciplinary reasons.

In the context of evaluating a disciplinary sanction by an employer, the arbitrator's fault-based analysis was appropriate. *See, e.g., E.I. DuPont de Nemours & Co. v. Grasselli Employees Independent Assoc.*, 790 *F.*2d 611, 614 (7th Cir.) (upholding arbitration award when "[t]he key to the arbitrator's award was his reasoning that the [employer] lacked just cause to terminate [the employee] because he was not at fault for his conduct"), *cert.*

*denied,* 479 *U.S.* 853, 107 *S.Ct.* 186, 93 *L.Ed.*2d 120 (1986). The arbitrator correctly required the Board to demonstrate that Horton was at fault for being absent excessively or, put differently, that a portion of her absences were not reasonably attributable to sickness or injury. Because the arbitrator was evaluating a disciplinary action taken by the Board, his analysis properly considered whether "the source of [Horton's] absences were illnesses and injuries beyond her control." ˙

█ Because the arbitrator was bound by PERC's determination that the Board had acted for disciplinary reasons, we conclude that the arbitrator acted within his authority when he analyzed the disciplinary withholding of Horton's increment under a just-cause standard. After applying that standard, the arbitrator found that "the disciplinary withholding of [Horton's] increment based upon the sheer number of days of her absences, without due consideration for the particular circumstances for her absences, was arbitrary and without any demonstrated rational basis." Having determined that the arbitrator acted within his discretion in applying a just-cause standard of review, we decline to scrutinize the merits of that determination. *See Local No. 153, supra,* 105 *N.J.* at 448, 522 *A.*2d 992 ("Many of the benefits of arbitration would be lost if reviewing courts were permitted to conduct *de novo* examinations of the merits of an arbitration award.").

Our holding that the arbitrator's determination be reinstated should not be understood to limit in any respect a board of education's authority to withhold an increment based on teaching performance. Furthermore, we imply no view concerning the merits of PERC's determination that the basis for withholding Horton's increment was predominantly disciplinary. That issue is not before us. We note, however, that if PERC were to have determined that the basis for withholding Horton's increment had been for predominantly educational reasons, the Appellate Division's conclusion that the Board had demonstrated sufficient cause to withhold the increment would have been sustainable. 270 *N.J.Super.* at 450, 637 *A.*2d 539.

Despite his conclusion that the withholding of Horton's increment under a just-cause standard was not sustainable, the arbitrator went on to state that "assuming it was proper to take some disciplinary action in 1990 in response to [Horton's] absenteeism, I conclude that the method the Board chose, the disciplinary withholding of an increment, was excessive." Because the arbitrator's initial conclusion that the Board lacked just cause to withhold the increment for disciplinary reasons is amply supported, we need not address the arguments presented concerning the arbitrator's collateral conclusion that the penalty imposed was excessive.

## IV

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.