295 N.J. Super. 15 (1996)
684 A.2d 511
UNION COUNTY COLLEGE, PLAINTIFF-RESPONDENT,
v.
UNION COUNTY COLLEGE CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1996.
Decided November 14, 1996.
*18 Before Judges KING, CONLEY and LOFTUS.
Paul Schachter argued the cause for appellant (Reinhardt & Schachter, attorneys; Mr. Schachter, of counsel and on the brief).
Frank J. Peterpaul argued the cause for respondent (Yauch, Peterpaul, Clark & Vitolo, attorneys; Mr. Peterpaul, of counsel and on the brief).
The opinion of the court was delivered by CONLEY, J.A.D.
Defendant Union County College Chapter of the American Association of University Professors (AAUP) appeals a Law Division order vacating an arbitration award in favor of its grievant, Spencer Zimmerman. We affirm.
The grievant, an assistant professor employed by plaintiff Union County College, was denied tenure and was not reappointed for the 1993-94 academic year. The AAUP grieved that determination on his behalf. Ultimately, the dispute was arbitrated, with an award for Zimmerman. Following a hearing, the record of which is not before us since it was not transcribed, the arbitrator determined that "the employer did violate the Agreement by not granting tenure ... [and] remanded to the department level ... [directing] that consistent criteria be applied.... [and] should there be any deficiencies in faculty-member's evaluation, said deficiencies be stated with specificity, so they may be properly addressed...."
The AAUP's grievance was premised upon a claim that the tenure denial violated a settlement of a prior grievance arising from the College's decision not to reappoint Zimmerman for academic year 1992-1993 and also based upon the contention that the College arbitrarily and capriciously did not comply with a positive recommendation by a peer review committee, did not provide "proper" reasons for the determination, and was arbitrary *19 and capricious in that the "criteria of Article XIII B. and C."[1] were not followed or "properly applied."
We deem it unnecessary to recount in detail the entire procedural and substantive history of the grievance. Suffice it to say that the settlement the AAUP relied upon related solely to Zimmerman's reappointment for academic year 1992-1993. It included an agreement that he be reappointed for that year and considered for reappointment for 1993-1994 as a fifth year reappointment. Under the collective agreement, Zimmerman would also have been considered for tenure as a fifth year assistant professor. The settlement is entirely silent as to Zimmerman's prospects for tenure consideration and suffice it also to say that under the parties' collective negotiations agreement the criteria for reappointment and tenure are distinct.[2]
Simply put, this the arbitrator did not understand. As the trial judge explained:
The agreement, in addressing criteria, very clearly shows that there is an enhanced level of evidence required for a tenure appointment beyond that required for the normal reappointment. That's important in this case because the focus of the dispute is not on the teaching effectiveness or the general academic record of Professor Zimmerman. No one has brought those general qualifications into issue here. But rather, the focus is on, in addition to that, does his file and his record at *20 the college demonstrate the other criteria of contribution to the college and the community? The arbitrator equated the criteria for reappointment with the criteria for tenure in this area. Throughout the decision the arbitrator continually referred to those criteria as being the same.
Reference to page 15 of the award and the ensuing pages. When speaking of the two decisions made by the department evaluation committee, the arbitrator said these two separate conclusions by the same department within a two week period cannot be reconciled. In so stating, the arbitrator fails to recognize that there are different criteria at work, that there is no inconsistency on a very basic and fundamental level with those two conclusions.
On the next page the arbitrator goes a little further and appears to apply the criteria in dealing with a contribution to the college and community, criteria set forth for the reappointment and to ignore different criteria set forth for the tenure appointment, and further he now, in speaking of these two appointments, uses the words "same criteria."
I find that that clearly is in error, that the agreement does not apply the same criteria to these appointments; that the agreement without question, as I have indicated, establishes a higher level of evidence when dealing with the tenure appointment. An arbitrator's decision must be founded on the agreement made by the parties that is before the arbitrator. If it goes beyond or if it makes a fundamental error in its reading of that agreement, it cannot stand. This agreement, this decision I think is fundamentally flawed for that reason.
We are cognizant of the appropriate scope of review of public-sector arbitration awards. To be sure, arbitration of labor-management disputes is favored, County College of Morris Staff Ass'n v. County College of Morris, 100 N.J. 383, 390, 495 A.2d 865 (1985), and arbitration awards are entitled to judicial deference, Local No. 153, Office and Professional Employees Int'l Union v. Trust Co. of New Jersey, 105 N.J. 442, 448-49, 522 A.2d 992 (1987). But that favor and that deference are not without limitation. Scotch Plains-Fanwood Bd. of Educ. v. Scotch Plains-Fanwood Educ. Ass'n, 139 N.J. 141, 149, 651 A.2d 1018 (1995). An arbitrator may not exercise greater authority than the contract confers. Ibid.; County College of Morris, supra, 100 N.J. at 391, 495 A.2d 865. "The scope of an arbitrator's authority depends on the terms of the contract between the parties." Scotch Plains-Fanwood, supra, 139 N.J. at 149, 651 A.2d 1018; see Local No. 153, supra, 105 N.J. at 449, 522 A.2d 992. Any action taken by an arbitrator beyond that authority is "impeachable and may be vacated on statutory grounds." Scotch Plains-Fanwood, supra, *21 139 N.J. at 149, 651 A.2d 1018; and see N.J.S.A. 2A:24-8d (arbitration award should be vacated where the arbitrator has exceeded his or her powers).[3]
There is, moreover, a distinction between public and private sector arbitration and the court's role in reviewing such awards. Tretina Printing, Inc. v. Fitzpatrick & Associates, Inc., 135 N.J. 349, 364-65, 640 A.2d 788 (1994); Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 524, 610 A.2d 364 (1992) (Wilentz, C.J., concurring) (majority opinion abrogated by Tretina, supra); PBA Local 160 v. Township of North Brunswick, 272 N.J. Super. 467, 472, 640 A.2d 341 (App.Div.), certif. denied, 138 N.J. 262, 649 A.2d 1283 (1994). As the Supreme Court recently observed "[i]n public-sector arbitration, an arbitration award may not have `the effect of establishing a provision of a negotiated agreement inconsistent with state statutory policy.'" Scotch Plains-Fanwood, supra, 139 N.J. at 150, 651 A.2d 1018 (citations omitted). And, thus, a public-sector arbitration award may be vacated because of a mistake of law, Tretina, supra, 135 N.J. at 364-65, 640 A.2d 788, or where the award has exceeded the inherent principles and public policy applicable to the public-sector collective negotiations process. Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 217, 405 A.2d 393 (1979); PBA Local 160, supra, 272 N.J. Super. at 473, 640 A.2d 341. And see Old Bridge Tp. Bd. of Educ. v. Old Bridge Educ. Ass'n, 98 N.J. 523, 527, 489 A.2d 159 (1985).
The subject of the arbitration award here was tenure. A tenure determination is a fundamental managerial prerogative. Such a determination is not negotiable. Teaneck Bd. of Ed. v. Teaneck Teachers Ass'n, 94 N.J. 9, 16, 462 A.2d 137 (1983); Rutgers v. Rutgers Council of AAUP Chapters, 256 N.J. Super. 104, 116, 606 A.2d 822 (App.Div. 1992), aff'd o.b., 131 N.J. 118, 618 *22 A.2d 853 (1993). With the limited exception of determining whether the education officials followed the proper procedures, such determinations are also not arbitrable.[4]Old Bridge Tp. Bd. of Educ. v. Old Bridge Educ. Ass'n, supra, 98 N.J. at 527-28, 489 A.2d 159 ("[t]he scope of arbitrability is generally coextensive with the scope of negotiability.... Thus the tests for each are nearly the same") (citing Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 160, 393 A.2d 278 (1978)). See Teaneck Bd. of Ed. v. Teaneck Teachers Ass'n, supra, 94 N.J. at 14-17, 462 A.2d 137.
Critically, the exception for "procedure" to the extent it impinges upon a managerial prerogative is narrow, Rutgers v. Council of AAUP Chapters, supra, 256 N.J. Super. at 118-20, 606 A.2d 822, and "[t]he simple labeling of a contract [provision] as procedural" is not dispositive, id. at 120-23, 606 A.2d 822. With respect to reappointment and tenure evaluations, "who is to perform a particular role in an evaluative process, how that role is to be fulfilled and what manner internal evaluative communications occur do impinge significantly upon the actual evaluation determination itself. These are aspects of the process that frame and shape the ultimate outcome." Id. at 123, 606 A.2d 822. We concluded in Rutgers, therefore, that collective negotiations proposals for a particular form to be used in the faculty evaluations, promotions and reappointments were not merely "procedural" and thus were not negotiable. We observed:
Ostensibly, proposal 8 would simply require the use of a form (already required by the University's Instructions) to set forth the results of the evaluation process at each level. But the proposal would do more: it requires that each candidate be rated under the same criteria and in a consistent manner. As noted in Dep't of Law and Pub. Saf. v. State Troopers NCO Ass'n, 179 N.J. Super. 80, 91, 430 A.2d *23 931 (App.Div. 1981), a public employer may establish different standards and values as it sees fit. The proposal also mandates the use of a category of rating, "not applicable," for particular circumstances. While uniformity and consistency in evaluation criteria is, most assuredly, desirable, if not actually required as a matter of reasonable administrative action, scope of negotiations determinations do not rest upon the desirability or reasonableness of particular proposals. It is neither PERC's function nor the court's in the context of an appeal involving public sector negotiations to dictate to a public employer how best to implement and perform managerial decision-making functions. If a particular proposal significantly intrudes on such decision-making, it matters not how good the proposal may be.
[256 N.J. Super. at 124-25, 606 A.2d 822.]
It is within the context of these legal principles that we consider the trial judge's vacation of the arbitrator's award. Our independent review of the pertinent contractual provisions and the arbitrator's rationale for his award leads us to the inescapable conclusion that the arbitrator acted beyond the scope of that agreement by considering the tenure determination based upon the very distinct reappointment criteria. We affirm the trial judge's decision in that respect substantially for the reasons set forth in his oral decision of October 4, 1995 from which we have previously quoted.
It is, moreover, undisputed that the processing of Zimmerman's reappointment and tenure application did comply with all of the procedures established by the contract. The AAUP and arbitrator's reference to noncompliance with "procedural process" relates entirely to their respective views as to the manner in which the College applied the evaluative criteria. One need only read the following critical portions of the arbitrator's decision to understand that:
Upon review of the department's recommendation not to approve the Grievant for tenure, the PEC voted to recommend the Grievant's reappointment and tenure on October 14, 1992. Under the Agreement, the PEC is an elected review body for Department recommendations. Contrary to the department recommendation of non-approval for the Grievant's tenure, the PEC not only recommended approval for tenure, but explained in detail how the Grievant met the criteria for tenure under the Agreement. Again, these same two (2) committees (Department and PEC) evaluated the same criteria pertaining to Article XV, C.2., of the Agreement; namely, "... contribution to the College or community." It should also be noted that both the department and the PEC evaluated the Grievant's same faculty record files in reaching their conclusions. Notwithstanding the PEC findings and *24 conclusions, Dr. Cronan, Vice President of Academic Affairs, chose not to accept the PEC's recommendation, but rather accepted the department's recommendation. Dr. Cronan's letter denying tenure to the Grievant does not explain how or why the latter failed to meet the criteria for tenure under the Agreement. In this regard, Dr. Cronan's notices to the Grievant mirror the notices of the department, where they simply state the Grievant lacked contribution to the College or community. Dr. Cronan also failed to explain why his decision differed from the PEC's recommendation or how the reasons submitted by the PEC in its detailed explanation were in any way defective in recommending the Grievant for tenure. In this regard, the decision of Dr. Cronan to merely accept the department's recommendation and ignore that of the PEC without stating reasons or an explanation was arbitrary and capricious.
It is also important to note that Dr. Cronan testified he did not review or know how many campuses the Grievant taught on, or how many campus assignments he had compared to other candidates. He also stated he did not know how much work was involved in the Grievant's Ph.D. Cronan did testify the Grievant worked on several committees and obtained additional graduate degrees. He further stated there was no evidence the Grievant did not participate in local, state, and national conferences. Although Cronan testified he did not agree with the department's initial recommendation for the Grievant's fifth-year appointment on September 25, 1992, he said he never disagreed in writing. Why? Did not the department consider the criteria of "evidence of contribution to College" in September 1992? The evidence reveals it did so when it wrote the Grievant "met the stated approval for this step...." Cronan also agreed the Grievant served on several committees, but questioned his sufficiency participation.
It should also be noted that Dr. Cronan came aboard in July, 1992. The evidence reveals, that prior to his coming on the scene, the policy was to only reevaluate the candidate on the criteria which had been found deficient. It would seem that in the interest of equity and fairness, if a faculty member is to be terminated, he/she should be given notice of a particular deficiency and an opportunity to address that deficiency. I also question why one (1) of the candidates for tenure was given a year to improve and was subsequently approved for tenure and the Grievant was given no time whatsoever. There is also evidence that the Grievant had some medical problems regarding short-term memory loss during the time in question. Of course, there is nothing in the Grievant's faculty record files concerning this illness and, therefore, the Employer cannot be presumed to have known of it. The evidence reveals, that through surgery and therapy, this condition has been corrected and is now under control. The Grievant has been working as an Adjunct Professor at another institution and can resume his normal duties should he be reemployed.
The arbitrator clearly disagreed with the ultimate determination to deny tenure as not sufficiently supported. But that is not his function under the collective negotiations agreement or under the law governing public-sector collective negotiations and grievances.
*25 Yet, the arbitrator characterized his determination as to the sufficiency of the College's reasons for denying tenure as a matter of "procedure." We disagree. There is no basis here for a claim of denial of due process. All of the procedural requirements were followed. While the College's reasons may have been terse, those reasons were fully consistent with the tenure criteria and gave Zimmerman the basis for the denial. This is not a case of no evidence in support of the College's tenure decision, or even a pretextual reason. Rather, it was the arbitrator's view that the College's rationale for the denial should have been more specific and his disagreement with the manner in which the evaluative criteria were applied, that forms the basis for his award. This is not, then, simply a matter of procedure. Rutgers v. Rutgers Council of AAUP Chapters, supra. Cf. Board of Ed. of Wyckoff v. Wyckoff Ed. Ass'n., 168 N.J. Super. 497, 502, 403 A.2d 916 (App. Div.), certif. denied, 81 N.J. 349, 407 A.2d 1222 (1979).
Finally, AAUP's reliance upon In re Boardwalk Regency Corp. for a Casino License, 180 N.J. Super. 324, 434 A.2d 1111 (App.Div. 1981), aff'd and modified, 90 N.J. 361, 447 A.2d 1335 (1982), for its proposition that a determination as to whether a decision is arbitrary and capricious because not supported by sufficient evidence is a matter of procedure, is misplaced in the context of this tenure arbitration. In re Boardwalk did no more than set forth our scope of review of an administrative agency's decision. We did not there equate the lack of evidential support and, thus, arbitrariness of an agency's decision with a matter of procedure. Unlike an administrative agency's quasi-judicial function in the setting of an administrative hearing, moreover, arbitrators in the public-sector are limited to the confines of the collective negotiations agreement. The parties' agreement here nowhere authorizes the arbitrator to evaluate the reasonableness of the public employer's tenure determination under the guise of procedure.
Affirmed.
NOTES
[1] Article XIII B and C set forth the criteria for reappointments. The criteria for tenure, on the other hand, are set forth in Article XV.
[2] The criteria for reappointment to the rank of assistant professor set forth in Article XIII are:

a. meeting the relevant criteria for promotion to and reappointment in the academic rank of instructor ...; and
b. demonstrated excellence in teaching and related student contacts ...; and
c. evidence of contribution to the College or professional development or a combination of both.
In contrast, Article XV of the parties' agreement provides, in pertinent part, that
Tenure shall only be awarded after presentation of positive evidence of excellence in teaching, scholarly achievement, contribution to the College or community and fulfillment of professional responsibilities. [Emphasis added.]
[3] Thus, the parties' agreement here expressly provides that "[i]n no event shall the arbitrator have the authority to add to, subtract from, modify or amend the terms of this Agreement."
[4] Expressly excluded from the scope of arbitration under the parties' agreement are "[g]rievances relating to appointment, reappointment or promotions ... [except] a claimed violation of the procedural process prescribed in this Agreement." The agreement, further, expressly precludes an arbitrator from ordering an appointment, reappointment or promotion. It is not disputed that these provisions, of course, also include tenure determinations.