686 A.2d 781

STATE OF NEW JERSEY, OFFICE OF EMPLOYEE RELATIONS, PLAINTIFF–APPELLANT, v. COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, AND AUDREY BOMSE, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 11, 1996—Decided January 7, 1997.

Before Judges KING, CONLEY and LOFTUS.

*Mary L. Cupo–Cruz,* Senior Deputy Attorney General, argued the cause for appellant (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Cupo–Cruz,* on the brief).

*Steven P. Weissman* argued the cause for respondents (*Weissman & Mintz,* attorneys; *Mr. Weissman,* on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

The State appeals a January 2, 1990 order entered by the Superior Court confirming a public-sector arbitrator's award interpreting certain collective negotiations agreement provisions relating to unclassified employees with six or more years of service serving at will or at the pleasure of their employer. The effect of the confirmation as to these employees is that when such an employee is separated from public employment without a stated reason, and the employee/union claims the real reason is misconduct, the dispute as to the reason for the separation will be submitted to binding arbitration, with the burden on the employee. If the arbitrator determines the separation from employment is for misconduct, then the employee is entitled to binding arbitration during which it becomes the employer's burden to prove the misconduct. The trial judge confirmed the arbitration decision because he viewed the arbitrator's interpretation of the relevant

contractual provisions, Article V, § J.1 to .3, and Article V, § J.5, as reasonably debatable.

We do not necessarily disagree with the trial judge's view that the arbitrator's interpretation of the pertinent provisions was reasonably debatable and not offensive of public policy or specific statutory authority. We recognize that judicial review of an arbitrator's award is somewhat limited. *See Scotch Plains–Fanwood Bd. of Educ. v. Scotch Plains–Fanwood Educ. Ass'n*, 139 *N.J.* 141, 149, 651 *A.*2d 1018 (1995). And we further recognize that *N.J.S.A.* 34:13A–5.3 permits public employers to negotiate disciplinary procedures for unclassified employees. We, as well, are mindful that the State has not asserted that the agreement to provide binding arbitration for unclassified employees with six or more years of service who are removed for misconduct is in any way inconsistent with the statutory authority of the respective state employers to hire such employees at will or at their pleasure. If the State, having negotiated binding arbitration for disciplinary removals of such employees, is not going to argue that that impermissibly intrudes upon the statutory right of a public employer to employ such employees only "to serve at the pleasure" of the employer, *e.g., N.J.S.A.* 52:27E–6, *repealed by, L.* 1994, ch. 58, § 70, eff. July 1, 1994; *N.J.S.A.* 2A:158A–6, we certainly will not make that argument for it. *Compare State v. State Troopers Fraternal Ass'n*, 134 *N.J.* 393, 417–20, 634 *A.*2d 478 (1993).

But we think there is a threshold issue concerning whether binding arbitration on the disputed interpretation of the provisions was within the authority of the arbitrator in the first instance. That is, does the contract confer upon the arbitrator authority to issue a binding interpretation of the provisions of Article V as they relate to an unclassified employee with six or more years of service who has been separated from service without a statement of reasons? This precise issue was not addressed by the trial judge, most likely because the respective applications for confirmation and vacation of the arbitrator's decision may not have raised the issue. Since arbitration in the

public-sector must comply with the parties' contract, the law, and the public policy, *e.g. Union County College v. Union County College Chapter of the American Association of University Professors*, 295 *N.J.Super.* 15, 20–21, 684 *A.*2d 511 (App.Div.1996), we think the issue critical. The answer seems quite clear to us. The applicable terms of the contract may authorize the parties to agree to an advisory opinion from the arbitrator but they do not permit binding arbitration on the threshold issue. On that basis alone we reverse.

That issue is better understood within the context of the applicable provision of the parties' collective negotiations agreement and the circumstances under which the dispute came to the arbitrator. As we have said, the pertinent provisions of the agreement are those set forth in Article V, § J that contain termination/disciplinary provisions applicable to unclassified employees who serve at-will or at the pleasure of their public employer. In full, Article V, § J provides:

1. The following shall constitute the disciplinary appeal procedure rights for unclassified and provisional employees who have been employed in such capacity for a minimum of six (6) months. Upon request of the employee, the employee may be represented by the Steward, or a non-State employee representative of the Union as follows:

In all disciplinary matters, except dismissal from service, such employees shall be entitled to utilize the provisions of this Article through the departmental hearing level.

2. In the event an unclassified or provisional employee is dismissed from State employment without receiving specific written reasons and such dismissal is not related to fiscal problems or programmatic changes and in the judgment of the State such dismissal is not of a nature whereby the employee must be immediately removed from the work location, the State shall provide the employee with at least ten (10) calendar days notice in advance of the dismissal.

Unless there are exceptional circumstances, when such employees are dismissed from State employment due to misconduct, management shall serve the employee with the specific written reasons relating to the misconduct. The employee may request and shall be granted a hearing by the department or agency head or his designee, whose decision shall be final. Time limits in E.3 shall apply. The burden of proof for unclassified employees shall be on the employee.

3. It is understood that nothing herein shall be construed as limiting the State from exercising its inherent discretion to terminate unclassified employees who serve at the pleasure of the department or agency head, without stating the

reasons therefore. Dismissal related to job performance shall not fall within the purview of this article. *Grievances concerning the interpretation of this article shall be processed in accordance with Article IV as non-contractual (A.2.) grievances.*

4. In no event shall the provisions of this Article apply where the employee is being removed as a result of the certification of a Department of Personnel eligible list.

5. Unclassified employees not covered by a statutory discipline procedure, who have served in unclassified titles for a minimum of six (6) consecutive years may appeal a Department level decision involving major discipline, for just cause, as defined under Section F. (a. through d.) of this article, to the Office of Employee Relations.

An appeal to the Office of Employee Relations may be brought by the employee through the Union by mailing a written request for review of the Department decision to the Office of Employee Relations by certified or registered mail. Such request for review must be postmarked within fifteen (15) calendar days from receipt of the decision rendered by the Department. The request shall contain the name of the Department or agency and the employee involved, a copy of the original appeal, the notice of discipline and the written decision rendered.

The Office of Employee Relations will meet with the Union to review the record of the discipline within 30 days of receipt of the appeal from the Union. If the discipline appeal is not resolved at that meeting it shall be so noted in writing. The Union, may elect to appeal the discipline to binding arbitration. The appeal shall be sent to the Office of Employee Relations (by registered or certified mail) and postmarked within eighteen (18) calendar days from the OER/Union written determination.

The arbitrators hearing these appeals shall come from the panel selected to hear minor discipline appeals from the Joint Union Management Panel. The arbitrator shall hold a hearing at a place convenient to the parties as soon as possible after the request for arbitration but not later then thirty (30) days after the arbitrator accepts the case.

The arbitrators shall confine themselves to determinations of guilt or innocence and the appropriateness of penalties and shall neither add to, subtract from, nor modify any of the provisions of this Agreement by any award. The arbitrator's decision with respect to guilt, innocence or penalty shall be final and binding upon the parties. In the event the arbitrator finds the employee guilty, the arbitrator may approve the penalty sought or imposed, or modify such penalty as appropriate to the circumstances, in accord with discipline as set forth in paragraph B of this article. Removal from service shall not be substituted for a lesser penalty. In the event the arbitrator finds the employee innocent or modifies a penalty, he may order reinstatement with back pay for all of part of a period of an imposed suspension or reduction in grade or period that the employee was dismissed from service. The arbitrator may consider any period of suspension served or the period that the employee was dismissed from service in determining the penalty to be imposed.

Should the arbitrator's award provide for reinstatement with backpay for all or part of a period of suspension, termination of service or reduction in grade, the employee may be paid for the hours he would have worked in his normally scheduled workweek at his normal rate of pay but not exceeding forty (40) hours per week or eight (8) hours per day, less any deductions required by law or other offsetting income for the backpay period specified by the arbitrator.

The arbitrator's decision shall contain a short statement of the nature of the proceedings, the positions of the parties and specific findings and conclusions on the facts. In addition, the arbitrator's decision shall discuss any of the testimony, evidence or positions of the parties which merit special analysis or explanation. The arbitrator shall not substitute a more severe penalty than has been imposed by the State.

The fees and expenses of the arbitrator shall be divided equally between the parties. Any other costs of this proceeding shall be borne by the party incurring the costs.

[Emphasis added].

In terms of the types of grievance procedures available to resolve disputes under the Article, Article IV, § A characterizes a grievance as either an "A.1"[1] grievance or "A.2."[2] Consistently throughout the contract, the dispute-resolving procedures established for A.2 grievances end with a "step-two" review by the particular public employer or the Office of Employee Relations. Such disputes are not the subject of "step-three" binding arbitration. In this respect, Article IV, § J.3 plainly and unambiguously states, "[g]rievances concerning the interpretation of this article shall be processed in accordance with Article IV as non-contractual (A.2) grievances."

As to the particular circumstances leading to the arbitration at issue, we discern the following. From March 1984 to December 1992, Audrey Bomse was employed in the Office of Inmate Advocacy within the Department of the Public Advocate as an Assistant

---

[1] An A.1 grievance is "a claimed breach, misinterpretation or improper application of the terms of this Agreement (contractual grievance)...."

[2] An A.2 grievance is "a claimed violation, misinterpretation or misapplication of rules or regulations, existing policies, orders, letters of memoranda or agreement, administrative decisions, or laws, applicable to the agency or department which employs the grievant which establish terms and conditions of employment and which are not included in A.1 above (non-contractual grievance)."

Deputy Public Defender I. She was an unclassified employee, serving "at the pleasure of" the Public Advocate/Public Defender. *N.J.S.A.* 52:27E–6 *repealed by, L.* 1994, ch. 58, § 70, eff. July 1, 1994; *N.J.S.A.* 2A:158A–6. At the end of the day on December 30, 1992, the then Public Advocate/Public Defender Zulima Farber gave Bomse a letter terminating her effective January 9, 1993. No reasons were provided and, consistent with Article V, § J.2, she was given ten days notice. It was stipulated by the parties that Bomse was not laid off from her position. She had no record of any disciplinary problems or any complaints of unsatisfactory work performance.

Bomse filed a grievance with the Office of of Employee Relations (OER) on January 5, 1993 alleging a violation of Article V, § J.2. In particular, she claimed "[d]ismissal from State service without receiving specific written reasons and/or nature of dismissal was not related to any fiscal or departmental managerial changes." She sought reinstatement to her position "with all back compensation due and an apology from management for not acting in good faith."

The OER determined that her grievance was not arbitrable. In this respect, Article IV, § D.10(b) provides:

> If the grievance involves a non-contractual matter as defined in A.2. the decisions of the Office of Employee Relations, or its designee, shall be final. If the grievance involves a matter as defined in A.1. above, such grievance may be appealed to Step–Three–Arbitration, provided all of the conditions and time limits ... are met.

Bomse persisted and, ultimately, the union took the position on her behalf that her firing was, in fact, for misconduct and that arbitration was required under Article V, § J.5. The State responded that her services were simply no longer needed and that her termination from an unclassified position was, therefore, not covered by statutory or contractual discipline procedures.

Reaching an impasse, the parties chose not to submit the dispute to the Public Employment Relations Commission by way of a scope-of-negotiations petition or to the court in the first instance for a declaration of arbitrability. *See State v. State Troopers Fraternal Ass'n, supra,* 134 *N.J.* at 399–400, 634 *A.*2d

478. Rather, they agreed to permit the arbitrator to consider the dispute "pursuant to Article IV, § H.5(d)." Article IV, § H.5 generally sets forth the grievance procedures available at the arbitration level. It is significant to us that the State limited its agreement to submit to the arbitrator the dispute only under paragraph d of § H.5. In part, that paragraph provides "[i]n the event a disagreement exists regarding the arbitrability of an issue, the arbitrator shall make a preliminary determination as to whether the issue is arbitrable under the express terms of this Agreement." Critically, there is nothing in Article IV, § H.5(d) or in the State's letter agreeing to submit the dispute under § H.5(d) which invokes *binding* arbitration on the preliminary determination.

To be sure, ambiguities exist under § J. On the one hand, § J.5 establishes for cause protection for unclassified employees with six or more years, such as Bomse, who are discharged for misconduct, and J.2 requires written reasons in the event of a removal for misconduct. On the other hand, J.3 attempts to reserve, nonetheless, the right of the employer to give no reasons at all. But, as we have previously said, there is no ambiguity in the express statement in paragraph 3 that disputes concerning the interpretation of "this article" are "A.2" disputes and, therefore, expressly excepted from binding arbitration procedures.

One might suggest "this article" refers only to J.3. However, the term "article" as used throughout the contract consistently refers to the particular article, here Article V. Moreover, even if limited to interpretations concerning J.3, the threshold dispute here primarily concerns J.3. The critical issue is whether the parties intended the limitations and reservations of managerial authority in J.3 to be limited by J.5. In either event, binding arbitration over such a threshold dispute is not within the authority of the arbitrator. His interpretative decision, thus, can be advisory only and not enforceable.

Since the arbitrator's decision is not enforceable, it cannot be confirmed and enforced by the Superior Court. We thus reverse

and remand for the entry of an order denying the union's motion for confirmation and enforcement of the award. The State's motion to vacate is moot.