**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2192-24

RUTGERS COUNCIL OF AAUP
CHAPTERS, AMERICAN
ASSOCIATION OF
UNIVERSITY PROFESSORS-
AMERICAN FEDERATION OF
TEACHERS, AFL-CIO,

     Plaintiff-Appellant,

v.

RUTGERS, THE STATE
UNIVERSITY OF NEW JERSEY,

     Defendant-Respondent.

_____

        Argued January 6, 2026 – Decided January 26, 2026

        Before Judges Gilson and Firko.

        On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000118-24.

        Ira W. Mintz argued the cause for appellant (Weissman & Mintz LLC, attorneys; Ira W. Mintz, of counsel and on the briefs; Derek J. Demeri, on the briefs).

Douglas Diaz argued the cause for respondent (Archer & Greiner, PC, attorneys; David A. Rapuano, of counsel and on the brief; Kyra G. Bradley, on the brief).

PER CURIAM

Plaintiff Rutgers Council of AAUP Chapters, American Association of University Professors-American Federation of Teachers, AFL-CIO appeals from a February 14, 2025 order denying its application to vacate an arbitration award entered in favor of defendant Rutgers, the State University of New Jersey (defendant or University) and granting defendant's cross-motion to confirm the award. The dispute centers on whether the University's decision to reassign Professor Kynan Johns and not have him act as the Director of Orchestras or Conductor of Sinfonia at its Mason Gross School of the Arts (MGSA) for the Fall 2021 semester was unjust discipline. We affirm.

## I.

The parties are familiar with the facts, which we need not repeat in detail here. To summarize, Professor Johns is a tenured professor at MGSA where he has worked since 2003. In 2018, he was promoted to Director of Orchestras, Director of Helix,[1] and Professor of Conducting. On September 5, 2019,

---

[1] "Helix" is described on Rutgers University's Website as an ensemble performed by the MGSA. Ensembles, Mason Gross School of the Arts,

A-2192-24

Professor Johns was intoxicated while conducting auditions for an upcoming music ensemble. Following an investigation, he was suspended without pay for the Spring 2021 semester. Professor Johns appealed his unpaid suspension. The Chancellor denied the appeal. Upon his return for the Fall 2021 semester, Professor Johns learned he would no longer be the Director of Orchestras or Conductor of Sinfonia.

Pursuant to a collectively negotiated agreement (CNA) that governs the relationship between the parties, plaintiff filed two grievances on behalf of Professor Johns. In pertinent part, Article 9 of the CNA provides a grievance procedure for "identifying issues, articulating and resolving problems, and disputes" between the parties. Two categories of grievances are described: Category One grievances involve "a mandatory subject of negotiations," while Category Two grievances involve "a non-mandatory subject of negotiations." Specifically, Article 9 states:

> Category One:
>
> A Category One grievance is a grievance alleging a breach, misinterpretation or improper application of the terms of this Agreement

---

https://www.masongross.rutgers.edu/degrees-programs/music/ensembles/ (last visited Jan. 16, 2026).

A-2192-24

involving a mandatory subject of negotiations, including an allegation of unjust discipline.

Excluded from Category One are all allegations concerning provisions of this Agreement when those provisions specify that grievances concerning them shall be considered as a Category Two grievance.

or

<u>Category Two</u>:

A Category Two grievance is a grievance alleging: (a) a violation, misinterpretation or improper application of the terms of this Agreement involving a non-mandatory subject of negotiations; or (b) there has been a misrepresentation, misapplication or violation of University policies, agreements, or administrative decisions, which intimately and directly affect the work and welfare of members of the unit.

Also included in Category Two are allegations concerning any matter which is mandated by law to be a subject of a grievance procedure of the Agreement, and which has not been provided for under Category One.

Also included in Category Two are allegations of harassment of a member of the negotiations unit that are not covered under Article 4 of this Agreement. For purposes of this paragraph, harassment is intentional persistent or repeated differential treatment that negatively and directly affects the work and welfare of a member of the negotiations unit.

4

Article 9 also provides "[t]he arbitrator shall not have the authority to amend, alter, or in any way change a University policy established practice, or provision of [the CNA]."

Article 15 of the CNA, entitled "Professional Duties," provides as follows:

> The parties recognize that the University accomplishes a variety of academic and professional services including undergraduate, graduate, and professional instruction, research and community service. The professional duties required of the faculty shall be in accordance with the mission of the University.
>
> Individual workload assignments of members of the negotiations unit shall be consistent with the practice and policies of their department, program, or unit.
>
> Claims of inconsistency with such practices and policies by members of the negotiations unit shall be grieveable as a Category Two grievance under the contract grievance procedure (Article 9).

Plaintiff filed the first grievance (the Intoxication Grievance) alleging defendant's suspension of Professor Johns constituted unjust discipline. The Intoxication Grievance is not challenged on appeal. The second grievance (the Reassignment Grievance), which is challenged on appeal, alleged that defendant's decision to reassign Professor Johns and not have him serve as the Director of Orchestras or Conductor of Sinfonia constituted unjust discipline.

A-2192-24

Defendant denied the grievances and plaintiff pursued arbitration. In response, defendant filed a scope of negotiations petition seeking to prevent arbitration of the Reassignment Grievance with the Public Employment Relations Commission (PERC). Defendant contended Professor Johns's grievance was not arbitrable pursuant to the CNA because it was a Category Two grievance as a reassignment under Article 15. Therefore, the grievance was not disciplinary in nature and therefore, not legally arbitrable pursuant to the New Jersey Employer-Employee Relations Act (EERA), N.J.S.A. 34:13A-1 to -64.

According to defendant, allowing this matter to proceed to arbitration would "significantly interfere with the determination of governmental policy" because the assignment of teachers is a "matter of educational policy," and defendant did not impose a penalty on Professor Johns. PERC disagreed and determined Professor Johns's assignments for the Fall of 2021 semester were disciplinary in nature and therefore, legally arbitrable. Neither party appealed from PERC's decision.

The grievances were consolidated into one arbitration proceeding. The arbitrator conducted virtual hearings on October 10, 2023, and January 18, 2024. At the first hearing date, defendant presented testimony from Dr. William Berz,

A-2192-24

Sergeant George Roitzsch, and Sophia Ennocenti. Dr. Berz testified he is a Director at the MGSA. He explained that professors are often reassigned at MGSA and testified regarding Professor Johns's Fall 2019-2020 assignment sheet and reassignments.

Sergeant Roitzsch is employed by the South Brunswick Police Department. He testified as to his involvement with the Intoxication Grievance. The record does not contain any reference to Ennocenti's testimony or her role in this matter. The arbitrator requested briefs from the parties on the appropriate standard of review to be applied for the Reassignment Grievance.

On January 5, 2024, the arbitrator issued an interim opinion and framed the Reassignment Grievance to be arbitrated as follows:

> GRIEVANCE No. 2 Removal from Certain Conducting
>
> Did [defendant] discipline Professor . . . Johns when it removed him from the Director of Orchestras position and other conducting posts, excepting Helix, without just cause? If so, what shall be the remedy?

On January 18, 2024, defendant presented Officer Jae Brian Kim, Dr. Rebecca Cypess, and Dean Jason Geary, the Dean of MGSA, for examination and cross-examination and moved exhibits into evidence. The record does not contain Officer Kim's testimony. However, the arbitrator's final opinion states he testified as to Professor Johns's intoxication. Dr. Cypess, an Associate

Director at MGSA, testified about Professor Johns's suspension following the intoxication incident and his reassignment to align with Dean Geary's vision.

Dean Geary testified to his "Three Pillars vision" for the MGSA and his decision to reassign Professor Johns because he did not fit the best interests of this vision. Dean Geary was newly hired to serve as Dean of the MGSA, and in this role, sought to "pull away from the traditional European canon" and described his focus on "collaboration, community engagement, and inclusive excellence." Dean Geary acknowledged that Professor Johns was "an excellent, accomplished conductor," but his vision statement did not encompass the Three Pillars curriculum or mention the Pillars in his statement. As a result, Dean Geary "did not find [Professor] Johns'[s] vision to be consistent with his own model of collaboration and felt he was not capable of "cultivating those goals."

Plaintiff did not present any witnesses. Professor Johns did not testify. The arbitrator issued a forty-one-page written opinion, which analyzed and discussed the evidence. The arbitrator denied both grievances. Regarding the Reassignment Grievance, the arbitrator determined:

> [Defendant] did not discipline Professor Johns when it assigned him a different schedule for his return in the Fall of 2021 because the Music Department curriculum had changed in focus and direction under the leadership of the new Dean, Jason Geary, who started and adopted a new approach to guide the Department.

8

The arbitrator found Dean Geary became Dean of MGSA on July 1, 2020. As Dean, the arbitrator noted Dean Geary was to oversee curriculum and programming, budgeting, financial matters, and fundraising. The arbitrator relied on Dean Geary's testimony that he had a goal to make the Department and its courses more "inclusive and diverse" for both the students and community members while "striving for academic excellence."

The arbitrator reasoned that Dean Geary's "strategic vision" for the MGSA was based on the "Three Pillars," he testified about. Dean Geary invited all full-time MGSA professors, including Professor Johns, to meet with him individually to discuss their vision for the orchestra. Professor Johns chose not to meet with Dean Geary but instead submitted a written outline. The arbitrator noted that the final decision concerning Professor John's Fall 2021 assignment rested with Dean Geary, who assigned him to Helix, graduate and undergraduate conducting courses, and professional development. The arbitrator concluded defendant's decision was based on "operational needs" rather than discipline, and there was no persuasive evidence that defendant "unjustly disciplined" Professor Johns. His compensation, benefits, and rank as a tenured professor remained unchanged.

A-2192-24

Plaintiff filed a verified complaint and an order to show cause (OTSC) to vacate the arbitration award under N.J.S.A. 2A:24-8, on the grounds the arbitrator exceeded her legal authority by effectively reversing PERC's findings of fact and conclusions of law and by shifting the burden of proof to plaintiff. According to plaintiff, the arbitrator's errors resulted in an arbitration award procured by undue means. Plaintiff argued a "mutual, final, and definite award" was not made, and the matter should be remanded back to the arbitrator for an appropriate award. Defendant filed an answer to the verified complaint seeking dismissal with prejudice and a cross-motion to confirm the arbitration award.

On February 14, 2025, the court conducted oral argument on the OTSC and cross-motion and subsequently issued a written opinion. After noting the narrow scope of review of an arbitration ruling, the court addressed each of plaintiff's arguments.

The court held there was no evidence suggesting the arbitrator procured the award through undue means or exceeded her powers. The court noted the burden of proof to vacate the arbitration award lies on plaintiff, and plaintiff failed to establish the award should be vacated pursuant to N.J.S.A. 2A:24-8. The court found the arbitrator acted within her authority in determining the merits of the Reassignment Grievance and whether the CNA provided a defense

10

for the reassignments. Further, the court held the arbitration award was valid even if the arbitrator's determinations differed with PERC's determinations because PERC's role was limited to determining negotiability and did not extend to the merits of the grievances or availability of contractual defenses, citing N.J.A.C. 19:13-1.1(b)(3).

The court determined that Article 15 of the CNA clearly granted defendant the contractual right to assign personnel in alignment with its mission and faculty duties. The court highlighted PERC's scope of negotiations' decision that the Reassignment Grievance was arbitrable "did not, a fortiori, override this agreement, nor did it preclude or deprive [defendant] of its rights and defenses under this section of the agreement that the reassignments were non-disciplinary, but rather, for operational reasons . . . ."

The court found the arbitrator's determinations were "reasonably debatable," her award was "justifiable," and "fully supportable in the record." The court concluded plaintiff fell "well short" of the "higher preferential burden" required for vacation under N.J.S.A. 2A:24-8(a) or (d). This appeal followed.

Before us, plaintiff argues the court misinterpreted the EERA and standards of review. Plaintiff reiterates its arguments that the arbitrator exceeded and imperfectly exceeded her authority, circumvented PERC's primary

jurisdiction, improperly shifted the burden of proof, and procured her award by undue means. Plaintiff argues the court impermissibly applied the reasonably debatable standard to a non-contract factual dispute.

II.

Briefly stated, the applicable principles guiding our review are well established. N.J.S.A. 2A:24-1 to -11 (the Act) governs arbitrations "arising from a collective bargaining agreement or collectively negotiated agreement." N.J.S.A. 2A:24-1.1.

The statutory basis for vacating an arbitration award under the Act is N.J.S.A. 2A:24-1, which provides:

> A provision in a written contract to settle by arbitration a controversy that may arise therefrom or a refusal to perform the whole or a part thereof or a written agreement to submit, pursuant to section 2A:24-2 of this title, any existing controversy to arbitration, whether the controversy arise out of contract or otherwise, shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract.

Pursuant to the Act, a party subject to an arbitration award may "commence a summary judgment . . . for vacation" within three months. N.J.S.A. 2A:24-7. If a party commences a summary judgment for vacation, N.J.S.A. 2A:24-8 authorizes the grounds for which a judge can vacate the

12

arbitration award. N.J.S.A. 2A:24-8 provides that a judge shall vacate an arbitration award of a collective bargaining agreement only:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8(a)-(d) (emphasis added).]

"Undue means" includes an arbitrator's "mistake of fact or an inadvertent mistake of law that is either apparent on the face of the record or admitted to by the arbitrator." Hillsdale PBA Loc. 207 v. Borough of Hillsdale, 263 N.J. Super. 163, 181 (App. Div. 1993) (citing Held v. Comfort Bus Line, Inc., 136 N.J.L. 640, 641-42 (Sup. Ct. 1948)), aff'd in part, rev'd in part, 137 N.J. 71 (1994). Arbitration awards must be set aside when "procured by . . . undue means." N.J.S.A. 2A:24-8(a). A court must also vacate an award "[w]here the arbitrator[] exceeded or so imperfectly executed their powers that a mutual, final and

13

definite award upon the subject matter submitted was not made."  N.J.S.A. 2A:24-8(d).

When moving to vacate an arbitration award, the complaining party bears the burden of establishing that the award clearly violates N.J.S.A. 2A:24-8. Anco Prods. Corp. v. T.V. Prods. Corp., 23 N.J. Super. 116, 124-25 (App. Div. 1952).  In addition to the statutory criteria in N.J.S.A. 2A:24-8, "a court, 'may vacate an award if it is contrary to existing law.'"  Borough of East Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 202 (2013) (quoting Middletown Twp. PBA Loc. 124 v. Township of Middletown, 193 N.J. 1, 11 (2007)).  But the "'limits to the arbitrator's authority . . . are defined by statute, N.J.S.A. 2A:24-8,' as well as 'by the questions framed by the parties in a particular dispute.'"  Sanjuan v. Sch. Dist. of W. N.Y., 256 N.J. 369, 382 (2024) (quoting Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 12 (2017) (alteration and omission in original)).

As the court here recognized, its authority to set aside an arbitration award is not to be exercised lightly.  Indeed, to promote a sense of finality and ensure judicial efficiency, there is "a strong preference for judicial confirmation of arbitration awards."  Middletown, 193 N.J. at 10-11 (quoting N.J. Tpk. Auth. v. Loc. 196, 190 N.J. 283, 292 (2007)).

14

We review a trial court's decision on a motion to vacate an arbitration award de novo. Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019). Having done so, we affirm for the reasons expressed by the court and add the following comments.

### III.

First, plaintiff argues the arbitrator imperfectly executed her authority by effectively reversing PERC's scope of negotiations decision and finding Professor Johns's Fall 2021 reassignments were not disciplinary. Defendant counters PERC's jurisdiction is limited to the "abstract issue" of negotiability, and the finding in making a scope of determination does not preclude an argument on the merits that the action was not disciplinary but rather based on "operational needs." Under N.J.S.A. 2A:24-8(d), a court must vacate an arbitration award "[w]here the arbitrator[] exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8(d).

An arbitrator imperfectly executes his or her powers within the meaning of the statute when they "ignore, disregard, and overlook the terms and conditions of [the] agreement." PBA Loc. 160 v. Twp. of North Brunswick, 272 N.J. Super. 467, 476 (App. Div. 1994). With respect to claims pursuant to

A-2192-24

N.J.S.A. 2A:24-8(d) that an arbitrator exceeded or so imperfectly executed his or her powers, courts must review whether the "arbitrator's award '[was] consonant with the matter submitted. Otherwise, the determination is contrary to the authority vested in him [or her].'" Sanjuan, 256 N.J. at 382 (quoting Grover v. Universal Underwriters Ins. Co., 80 N.J. 221, 231 (1979)).

Whether or not the arbitrator exceeded his or her authority "entails a two-part inquiry: (1) whether the agreement authorized the award, and (2) whether the arbitrator's action is consistent with applicable law." East Rutherford, 213 N.J. at 212. Plaintiff maintains the arbitrator exceeded her authority by deciding Professor Johns's reassignment was not disciplinary, contradicting PERC's finding under its exclusive authority on the scope of arbitrability.

Enacted in 1968, the EERA is the statutory framework that governs labor relations between public employers and employees. See In re Loc. 195 IFPTE, 88 N.J. 393, 401 (1982). In doing so, the EERA recognizes public employees' "legitimate interest in engaging in collective negotiations about issues that affect 'terms and conditions of employment.'" Ibid. (quoting N.J.S.A. 34:13A-5.3).

N.J.S.A. 34:13A-5.4(d) provides PERC with the authority to administer and interpret the EERA. State, Div. of State Police v. N.J. State Trooper Captains Ass'n, 441 N.J. Super. 55, 63 (App. Div. 2015). Specifically, N.J.S.A.

16

A-2192-24

34:13A-5.4(d) states PERC "shall at all times have the power and duty, upon the request of any public employer or majority representative, to make a determination as to whether a matter in dispute is within the scope of collective negotiations." Accordingly, PERC has "primary jurisdiction pursuant to [the EERA] 'to determine in the first instance whether a matter in dispute is within the scope of collective negotiations.'" Rozenblit v. Lyles, 245 N.J. 105, 122 n.2 (2021) (quoting In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 16 (2020)).

"The scope of arbitrability is generally coextensive with the scope of negotiability." Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n, 94 N.J. 9, 14 (1983). "To be arbitrable, a matter must qualify as one on which the parties may negotiate. A matter which is not legally negotiable in the first place cannot be arbitrable." Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 160 (1978).

> PERC has primary jurisdiction to make a determination on the merits of the question of whether the subject matter of a particular dispute is within the scope of collective negotiations . . .
>
> If PERC concludes that the dispute is within the legal of negotiability and agreement between the employer and employees, the matter may proceed to arbitration. Where PERC concludes that a particular dispute is not within the scope of collective negotiations, and thus not arbitrable, it must issue an injunction permanently restraining arbitration.

A-2192-24

[Id. at 154 (citations omitted).]

"Fundamentally, the scope of public employment negotiation is divided, for purposes of analysis, into two categories of subject matter comprised of mandatorily negotiable subjects and non-negotiable matters of governmental policy." Robbinsville Twp. Bd. of Educ. v. Wash. Twp. Educ. Ass'n, 227 N.J. 192, 198 (2016). The reasoning for this divide is that, in the public sector, "prerogatives of management, particularly those involving governmental policy making, cannot be bargained away to be determined by an arbitrator." Kearny PBA Loc. #21 v. Kearny, 81 N.J. 208, 215 (1979). Thus, while the EERA provides public employees with the right to engage in collective negotiations, "'the scope of negotiations in the public sector is more limited than in the private sector' due to the government's 'special responsibilities to the public' to 'make and implement public policy." In re County of Atlantic, 445 N.J. Super. 1, 21 (App. Div. 2016) (quoting Loc. 195, 88 N.J. at 401-02).

Therefore, for an issue to be a mandatorily negotiable subject, rather than a non-negotiable matter of governmental policy or prerogative of management, the following three factors must be found: "(1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated

18

agreement would not significantly interfere with the determination of governmental policy." Robbinsville Twp. Bd. of Educ., 227 N.J. at 199 (quoting Loc. 195, 88 N.J. at 404).

To determine whether "a negotiated agreement would significantly interfere with the determination of governmental policy," PERC must "balance the interests of the public employees and the public employer." Loc. 195, 88 N.J. at 404-05. This "weighing or balancing" informs whether the "dominant issue" concerns the exercise of a non-negotiable managerial prerogative. See Bd. of Educ. of Woodstown-Pilesgrove Reg'l Sch. Dist. v. Woodstown-Pilesgrove Reg'l Educ. Ass'n, 81 N.J. 582, 591 (1980).

PERC has reasoned it "consider[s] such factors as whether [an employer's action] was intended to accomplish . . . staffing[] or operational objectives; whether the [employer] has explained how the [action] was so linked; and whether the employee was reprimanded for any conduct or incident which prompted the [action]." In re Old Bridge Twp. Bd. of Educ., P.E.R.C. No. 2005-64, 31 N.J.P.E.R. ¶ 49, 2005 NJ PERC LEXIS 96, at *8 (2005) (quoting In re W. N.Y. Bd. of Educ., P.E.R.C. No. 2001-41, 27 N.J.P.E.R. ¶ 32037, 2001 NJ PERC LEXIS 48, at *14 (2001)).

19

PERC has adopted regulations for parties attempting to seek a determination of whether a matter is within the scope of negotiations. N.J.A.C. 19:13-1.1 to -12. A party may file a scope of negotiations petition to PERC to determine whether a matter is within the scope of negotiations and therefore arbitrable. N.J.A.C. 19:13-2.1. If a party wants to challenge PERC's scope of negotiations decision, he or she may appeal the decision to this court. N.J.S.A. 34:13A-5.4(d).

Plaintiff cites to our Supreme Court's decision in Scotch Plains-Fanwood Bd. of Educ. v. Scotch Plains-Fanwood Educ. Ass'n, 139 N.J. 141 (1995), for the proposition that an arbitrator is bound by PERC's finding that a matter was disciplinary. In that case, the Scotch Plains-Fanwood Education Association (the Association), on behalf of a teacher, filed a grievance related to the Scotch Plains-Fanwood Board of Education's (the Board) decision to withhold a salary increment based on absenteeism. Id. at 145-47. The Board denied the grievance and cited "educational reasons" for withholding the salary increment. Id. at 147. Pursuant to the scope of negotiations amendment, N.J.S.A. 34:13A-26 to -29, the Association pursued arbitration, and the Board filed a scope of negotiations petition to PERC to restrain the arbitration. Ibid.

The Supreme Court noted "N.J.S.A. 34:13A-27a expressly confers on PERC the authority to resolve a dispute concerning whether the basis for an increment-withholding is disciplinary." Id. at 155. Previously, PERC had determined the basis for withholding the salary increment was predominantly disciplinary, and accordingly, found that the dispute was arbitrable. Id. at 147. The Board did not appeal PERC's decision, and the parties proceeded to arbitration. Ibid. Because the Board did not appeal PERC's finding, the Supreme Court held it was bound by PERC's finding that the decision was predominantly disciplinary. Id. at 155. The Supreme Court stated "although the Board argued that it withheld the increment for predominantly educational reasons, it did not appeal PERC's decision that the basis for withholding had been predominantly disciplinary. Hence, the arbitrator had no alternative other than to apply a standard less permissive than that set forth in N.J.S.A. 18:29-14." Ibid.

However, Scotch Plains is not directly applicable to this matter because Scotch Plains applied the Scope Amendments, which are distinct statutes under the EERA that are not relevant to the Discipline Amendments, which govern this dispute. Ibid. Further, the Scope Amendments provide broader power to PERC and apply to the employees of local school districts, and not to other

21

public employers, such as State colleges or universities.  Ibid.  Therefore, it was "reasonably debatable" for the arbitrator here to conclude the holding in Scotch Plains was not relevant to this action filed under N.J.S.A. 34:13A-5.3.

The arbitrator was free to determine the merits of the Reassignment Grievance and was not factually or legally precluded by PERC's finding because PERC has no power to consider the contractual merits of a claim.  Ridgefield Park, 78 N.J. at 154; see also N.J.S.A. 19:13-1.1(b)(3).  Therefore, we conclude the court correctly determined the arbitrator did not imperfectly execute or exceed her powers in entering the arbitration award.

IV.

Finally, plaintiff argues vacation is necessary because the court made the same errors of law as the arbitrator.  First, plaintiff contends the court erred in affirming the arbitration award and determining the arbitrator was within her authority to determine whether the reassignment was disciplinary.  Second, plaintiff maintains the court erred in relying on the reasonably debatable standard in affirming the arbitration award when that "standard applies only to interpretation of the CNA," citing Policemen's Benevolent Ass'n. v. City of Trenton, 205 N.J. 422, 429 (2011).  We are unpersuaded.

A-2192-24

"Under the 'reasonably debatable' standard, a court reviewing [a public-sector] arbitration award 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" East Rutherford, 213 N.J. at 201-02 (quoting Middletown Twp., 193 N.J. at 11). The court correctly applied the reasonably debatable standard. The arbitrator was free to determine Professor Johns's reassignment under Article 9 or 15 of the CNA. As stated, the CNA contractually defines discipline in Article 9 as the "formal imposition of a penalty in response to alleged wrongdoing," and Article 15 provides for faculty assignments.

In sum, the court properly determined the arbitrator's decision was justifiable, or fully supported in the record, and thus met the highly deferential "reasonably debatable" standard. Trenton, 205 N.J. at 431. Moreover, PERC's role was limited to determining arbitrability, and the arbitrator was free to determine "[w]hether a contract provides a defense to the employer's alleged action," under N.J.S.A. 19:13-1.1(b)(3). We discern no grounds to disturb the court's decision.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hasley*

Clerk of the Appellate Division

A-2192-24